UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN SHELTRA,<br><br>Plaintiff,<br><br>v.<br><br>JAY CHRISTENSEN; D.W. DIETZ; SGT. TAYLOR; and CPL. FRAHS,<br><br>Defendants. | Case No. 1:20-CV-0215-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This case involves an Eighth Amendment claim brought by inmate Shawn Sheltra against Defendants Warden Jay Christensen, Sergeant David Dietz, Sergeant Travis Taylor, and Corporal Benjamin Frahs (collectively "Defendants").[1]

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 16). The parties have filed their responsive briefing on the motions and/or the time for doing so has passed without response.

Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided

---

[1] Additional named defendants were dismissed in the Court's Initial Review Order. Dkt. 6.

by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For reasons stated herein, the Court GRANTS Defendants' Motion for Summary Judgment (Dkt. 16).

## II. BACKGROUND

Sheltra is an Idaho Department of Corrections ("IDOC") inmate incarcerated in the Idaho State Corrections Center ("ISCC"). Sheltra alleges his Eighth Amendment right to be free from cruel and unusual punishment was violated when, on April 17, 2020, he was attacked by an inmate acting as an agent for another inmate. Defendants suggest summary judgment is appropriate because Sheltra failed to exhaust his administrative remedies prior to filing suit.

Specifically, IDOC has a three-step grievance process, which requires an inmate to: (1) seek an informal resolution of the matter by completing an Offender Concern Form; (2) complete a Grievance Form if an informal resolution cannot be accomplished; and (3) file an appeal of the response to the grievance. *See* Dkt. 16-4, at 3. Upon completion of all three steps, the inmate grievance process is exhausted. Sheltra has apparently filed many Offender Concern Forms in the past. *See* Dkt. 7-1.

On March 13, 2020, Sheltra filled out a Grievance Form informing Christensen and Dietz that he was housed in the same cell as an inmate who he believed was a serious safety issue. The response, dated March 18, 2020, noted there were no active safety concerns with any of the inmates housed at the ISCC. The reviewing authority also noted there were zero documented safety concerns. Sheltra filed an appeal, asserting he was being extorted by

inmates Walton, Young and Willard for money and threatened with an attack if he did not pay. The appellate authorities noted they were aware of an extortion ring and placed Sheltra in isolation while they conducted an investigation. However, Sheltra alleges he was subsequently released from isolation and, on April 17, 2020, was violently assaulted by an inmate who was paid to assault him by the person he had reported to the staff that he had problems with. Dkt. 7, at 3. Sheltra does not identify either the inmate who assaulted him, or the inmate who he had reported he had problems with and who purportedly paid his assailant. Sheltra did not file any additional grievances within thirty days of the April 17, 2020 attack.

Sheltra filed his Amended Complaint against Defendants on July 23, 2020. Dkt. 7. On January 4, 2021, Defendants filed their Motion for Summary Judgment, alleging Sheltra failed to exhaust his administrative remedies. Defendants also argue all official capacity claims against them should be dismissed because they are entitled to Eleventh Amendment immunity. Dkt. 16. Sheltra filed a Memorandum in Opposition to Defendants' Motion, and Defendants replied to Sheltra's Memorandum. *See* Dkts. 24, 25.

### III. ANALYSIS

Summary judgment is appropriate where the moving party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal

purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 322. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, the nonmoving party "must go beyond the pleadings and by its own evidence and 'set forth

purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 322. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, the nonmoving party "must go beyond the pleadings and by its own evidence and 'set forth

specific facts showing that there is a genuine issue for trial.'" *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting the nonmoving party must "identify with particularity the evidence that precludes summary judgment."). "If the evidence is colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

In the present case, Sheltra argues his Eighth Amendment rights were violated when Defendants failed to protect him from the April 17, 2020 attack. Defendants argue summary judgment is appropriate because Sheltra failed to exhaust available administrative remedies following the attack.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." *Woodford v. Ngo*, 548 U.S. 81, 87–88 (2006) (emphasis in original). The PLRA's exhaustion requirement is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Proper exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so *properly*." *Pozo v. McCaughtry*, 286 F.3d 1002, 1024 (7th Cir. 2002). "Whether the administrative process actually produces a result that satisfies the inmate is not the appropriate inquiry. Instead, courts merely need to ask whether the institution has an internal administrative grievance process in place, then § 1997e(a) requires inmates to exhaust those procedures before bringing a prison conditions claim." *Massey v. Helman*, 196 F.3d 727, 733–34 (7th Cir.

1999). Further, a prior grievance or complaint "cannot exhaust administrative remedies for claims based on events that have not yet occurred." *Dalton v. Aulepp*, No. 13-3089-SAC, 2015 WL 728490, at *8 (D. Kan. Feb. 19, 2015) (cleaned up)); *see also Perry v. Dickinson*, No. 2:10-cv-3223 KJN P, 2012 WL 2559426, at *3 (E.D. Cal. June 29, 2012); *Pasion v. McGrew*, No. 10-00443 HG-LEK, 2010 WL 3184518, at *2 (D. Haw. Aug. 11, 2010) ("It is axiomatic that Petitioner cannot grieve a wrong that has not yet occurred[.]").

A prisoner's failure to exhaust administrative remedies is an affirmative defense which the defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). On summary judgment, if a defendant initially shows that: (1) an available administrative remedy existed; and (2) the plaintiff failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the plaintiff fails to meet this burden, the court should dismiss the unexhausted claims or action without prejudice. *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005).

Here, Sheltra argues his March 13, 2020 grievance and subsequent appeal exhausted his administrative remedies with respect to the April 17, 2020 attack. Defendants counter that this case should have the same outcome as that in *Perry*. 2012 WL 2559426, at *3. In *Perry*, an inmate contended defendants failed to protect him from a prison attack despite his "repeated requests orally and in writing" to protect him from white supremacists and their continual threats to do him harm. *Id*. The inmate contended one such grievance was filed on October 1, 2009. *Id*. However, defendants argued the inmate's October grievance

could not have exhausted the inmate's claim that defendants failed to protect him from an attack that occurred on December 25, 2009, because the attack had not yet happened. *Id*. The court agreed, finding defendants' objection as to timing was "well-taken." *Id*. The present case is highly analogous to the situation in *Perry*. Just as in *Perry*, Sheltra claims he exhausted the administrative remedies available to him and brings this action regarding an attack that happened *after* he filed his grievance. As outlined in the IDOC policy, Sheltra was required to submit a grievance regarding the April 17, 2020 attack within thirty days of the incident. *See* Dkt. 16-4, at 3. He did not. While Sheltra did subsequently file an Offender Concern Form on July 27, 2020 regarding the April 17, 2020 attack, this is only the first step towards exhaustion and was filed well-beyond thirty days after the attack. Accordingly, the Court finds Sheltra failed to exhaust his administrative remedies prior to filing this suit.

Sheltra provides several arguments against Defendants' Motion. First, Sheltra argues that the IDOC policy "prohibits the filing of another grievance which contains the same subject matter of a previous grievance." Dkt. 24, at 4. Although that is true, this provision is not relevant in the present case. Had Sheltra filed another grievance following the attack, the subject matter would have been the attack itself, and not the threat of an unidentified inmate and extortion complained of in his March 2020 grievance and appeal. Accordingly, this argument is baseless.

Next, Sheltra asserts his vision was impaired for "about 50 days" as a result of the attack, and that he was improperly denied an exception to IDOC's thirty-day rule. *Id.* at 4–5. The IDOC policy allows for either the deputy chief of the Prisons Bureau, the chief of

the Operations Division, or the director of IDOC to waive the thirty-day rule "and order that [a] grievance be accepted and processed." Dkt. 16-4, at 8. Although, on July 27, 2020, Sheltra filed an Inmate Concern Form and requested "permission to file a grievance beyond the 30 day limit as it concerns my safety," Sheltra made no mention of impaired vision or other inability to submit a grievance after the April 17, 2020 attack in his Inmate Concern Form. Dkt. 25-2. Accordingly, the Court finds Sheltra's *post-hoc* argument is without merit.

Finally, Sheltra argues the IDOC policy "does not allow for a grievance to be filed as to a 'failure to protect claim.'" *Id.* at 5. This is inaccurate. As the IDOC policy states, "[t]he categories are used for administrative tracking purposes and are not for determining inclusion or exclusion criteria." Dkt. 16-4, at 5. Further, failure to protect claims are not included on IDOC's list of non-grievable issues. *See* Dkt. 16-4, at 4–5. Thus, Sheltra's argument is unfounded.

For the above stated reasons, the Court finds Sheltra failed to properly exhaust his available administrative remedies regarding the April 17, 2020 attack prior to filing this suit. Accordingly, Sheltra's suit is appropriately dismissed without prejudice.[2]

///
///
///
///

---

[2] Defendants also assert any official capacity claims against them must be dismissed because they are entitled to immunity under the Eleventh Amendment. Dkt. 16-1, at 7–8. Because the Court finds Sheltra's claim should be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court does not address Defendants' Eleventh Amendment argument.

# V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Dkt. 16) is GRANTED. Sheltra's Amended Complaint (Dkt. 7) is **DISMISSED** without prejudice.

DATED: May 5, 2021

_____
David C. Nye
Chief U.S. District Court Judge